# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Princess Wells,                                          Case No.  3:08CV2264

       Plaintiff

       v.                                              **ORDER**

Chrysler Group LLC, et al.,


       Defendant


This is a suit by Princess Wells against her former employer Chrysler Group LLC (Chrysler) and former Union UAW Local 1435. Against Chrysler, plaintiff claims: 1) failure to accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A), and O.R.C 4112.02; 2) sex and race discrimination under 42 U.S.C. § 2000e-2(a)(1); 3) age discrimination under 29 U.S.C. § 623(a); and 4) retaliation.

Wells also claims that UAW Local 1435 denied her fair representation because of: 1) race, sex, and age discrimination; and 2) retaliation.

Pending are defendants' motions for summary judgment. (Docs. 85, 86). For the reasons that follow, I grant the motions.

### Background

Princess Wells began working for Chrysler in 1979 in Wisconsin. (Wells Aug. 16, 2012 Dep., at 26). Wells transferred to the Toledo Machining Plant (TMP) in 1991. (Wells Dep. 21). Wells came to TMP with physical restrictions, which limited the jobs she could perform. (*Id.* at 51).

Chrysler shut down operations in Wells' "home department" in May, 2006. (*Id.* at 54). Chrysler placed Wells in a temporary job in another department, which Wells referred to as a "fin stacking" job. The "fin stacking" job was only necessary when the "fin stacking" machine was down. (*Id.* at 64). Consequently, Chrysler did not need Wells to work from September 9-18 and from November 3-20. (*Id.* at 68-69; 72).

Wells requested a regular, non-temporary position consistent with her restrictions. (*Id.* at 74). At that time, Wells' physical restrictions included: 1) no stooping or squatting; 2) no climbing; 3) no lifting more than 15 pounds with both hands; and 4) the availability of a sit-stand option. (*Id.* at 73).

A labor relations supervisor, in cooperation with the Union, identified a "fin setting" position for Wells. (Weber Dep. at 16-17). After observing the position, the TMP physician determined that Wells' physical restrictions could be accommodated on the "fin setting" job. (Parkins Dep. at 7-8).

Chrysler placed Wells on the "fin setting" job effective December 11, 2006. (Weber Dep. at 15-16). Wells claimed that she "started feeling something" on the first day she performed the "fin setting" job. She missed the second day on that job.

On December 13, 2006, Wells complained of shoulder pain to the TMP physician. The TMP physician gave Wells "coaching tips" that she believed would allow Wells to work without discomfort. (Parkins Dep. at 13-14). The physician stated that there is a learning curve when employees begin a new job. At first, the physician recommends coaching tips for employees that complain of discomfort. *Id.*

Wells again complained of shoulder pain to the physician early on December 14, 2006. The TMP physician sent Wells back to work for the day. The physician told Wells to see her family

physician. (Wells Dep. at 124). Wells' family physician told her to start physical therapy. (*Id*. at 126).

Wells called in sick on December 15, 2006. She never returned to active employment at TMP thereafter. (*Id*. at 125-126).

On February 1, 2007, a Workers' Compensation claim was filed on Wells' behalf. Wells stated that she does not know who filed the claim. (*Id*. at 132; *id*. at Ex. G). The claim was dismissed. (*Id*. at Ex. H). Wells' claim was re-filed and denied again. At the time of Wells' deposition, the denial of her Workers' Compensation claim was pending in the Court of Common Pleas. (*Id*. at 134, 137).

On February 26, 2007, Chrysler sent Wells a letter telling her to report to the employment office by March 6 to establish a reason for her absence. (*Id*. at Ex. J; *id*. at 141). Wells presented an "off slip" from Darrell A. Hall[1], M.D. The slip indicated Wells was "off work" from March 8, 2007, until April 8, 2007, and presented a diagnosis of "allowed BWC codes." (*Id*. at Ex. K; *id*. at 143).

Chrysler sent Wells another letter requiring her to return to the employment office by May 4, 2007, and justify her absence. (*Id*. at Ex. L; *id*. at 145). Wells presented two notes from Dr. Hall indicating she was "off work" through May 24, 2007, with a diagnosis of rotator cuff syndrome. (*Id*. at Ex. M; *id*. at 147).

On May 18, 2007, Wells filed the first of five charges of discrimination against Chrysler with the Ohio Civil Rights Commission (OCRC). She alleged Chrysler discriminated against her because

---

[1] The Ohio State Medical Board permanently revoked Darrell Hall's medical license in 2010. (http://med.ohio.gov/formala/35072948.pdf). He pled guilty to one count each of health care fraud, conspiracy to distribute a controlled substance, and failure to account for and pay employment tax. Sr. U.S. Distirct Judge David A. Katz sentenced Mr. Hall to five years in prison on March 26, 2013. *See* Case No. 3:12-CR-00385.

of race, sex, disability, and age. (*Id*. at Ex. N; *id*. at 151). The form filed with OCRC told Wells to describe briefly the facts she believed indicated discriminatory employment practice. Wells wrote, "I was placed on a job I was physically not able to perform resulting in injury, company refuses to accommodate my restrictions, off without wages and benefits." (*Id*. at Ex. N).

Wells claimed discrimination because Chrysler placed two white males on the "fin stacking" job after placing her on the "fin setting" job. (*Id*. at 161). But Wells admitted that Chrysler placed other females and other black employees on the "fin stacking" job after placing her on the "fin setting" job. (*Id*. at 164-165). Wells was unable to say that Chrysler placed no older employees on the job after she left. *Id*. The OCRC found no probable cause and dismissed the charge. (*Id*. at Ex. UU).

On May 23, 2007, Wells gave Chrysler a statement from Dr. Hall that indicated she could not return to work with restrictions until July 24, 2007. The restrictions included no: 1)use of left hand; 2) lifting or carrying; 3) bending; 4) twisting or turning; 5) reaching below the knee; 6) pushing or pulling; and 7) squatting or kneeling. (*Id*. at Ex. R; *id*. at 172-174).

Wells admitted that she is left-handed and could not perform the "fin setting" job with only her right hand. (*Id*. at 176-177). Wells does not dispute that she told the TMP physician on July 25, 2007, that she could not think of any other jobs she could do.

Wells now has listed some positions she felt qualified to do with one hand. (Wells Affidavit ¶4, April 18, 2013). At deposition, plaintiff asked the labor relations supervisor about many of the named positions. The supervisor testified that many did not exist and others were not within Wells' physical restrictions. (Weber Dep. 31-32). In fact, the labor relations supervisor stated that no operator jobs at TMP could be performed with one hand. (*Id.* at 37).

4

Wells relies on testimony of a former union steward to show Chrysler could have found work for her. The former union steward testified he was not aware of Wells' restrictions, but the union usually tries to keep an employee in the plant doing something. (E. Phillips Dep. at 12). He was not aware of any derogatory comments made about Wells or her restrictions. *Id.*

Chrysler placed Wells on medical Code 31 layoff (no work available for employees with restrictions) on May 24, 2007. (Wells Dep. at Ex. X). The layoff notice gave instructions for Wells to receive unemployment benefits and supplemental union benefit (sub) payments. *Id.* Wells received unemployment compensation and sub payment equal to ninety-five percent of her wages from June 22, 2007, until August 1, 2008. (*Id*. at 211-213).

While on Code 31 layoff, Chrysler required Wells to visit TMP periodically and bring updated physician's statements. (*Id*. at 217). Although Wells saw Dr. Hall for her shoulder during this period, she did not remember what treatment she received. (*Id*. at 220).

During the Code 31 layoff, Wells took prescription narcotics, but her condition did not improve. (*Id*. at 221-222). The TMP physician was concerned that Wells was not getting any active care and appeared to be getting worse. (Parkins Dep. 21-22). The TMP physician, believing Wells was undertreated and taking large doses of sedatives, gave Wells instructions about getting treatment from a specialist. (*Id*. at 42).

On January 2, 2008, Wells gave TMP another form from Dr. Hall indicating she was totally disabled from working. (Wells Dep. at Ex. CC). An additional form extended Wells' totally disabled status until June 26, 2008. Even though Wells was eligible for Code 52 layoff (unpaid sick leave), Chrysler continued Wells on Code 31 layoff. (*Id*. at Ex. DD).

On June 26, 2008, Wells gave TMP another form from Dr. Hall stating she was totally

disabled from working until September 26, 2008. (*Id*. at Ex. EE). The TMP physician instructed Wells to return in two weeks with additional information from her physician including: 1) physical condition; 2) need for restrictions; and 3) ability to work.

On July 10, 2008, Wells submitted substantially the same form she had submitted on June 26. Wells recalled the TMP physician telling her she needed to provide more medical information to establish her disabled condition. (*Id*. at 246-247). Specifically, Wells recalled the TMP physician wanted a prognosis and diagnosis. The physician gave Wells a written statement as to the information she needed to get and told Wells to give the note to Dr. Hall. (*Id*. at 247).

The labor relations supervisor explained to Wells that she could either gather the information requested or authorize the TMP physician to contact Dr. Hall directly. (Weber Dep. at 19-20). The labor relations supervisor told Wells if she failed to provide the requested documentation, she would be placed on Code 52 layoff without pay. (*Id*. at 24). According to a former union steward, the change from Code 31 to Code 52 layoff is standard procedure if the employee fails to provide timely medical documentation. (Schultz Dep. at 31).

On July 11, 2008, Wells filed a charge against Chrysler claiming that it retaliated against her for filing the original discrimination claim. (Wells Dep. at Ex. GG). Wells alleged: 1) on May 30, a receptionist tried to coerce her with paperwork and instructions on how to apply for permanent total disability retirement; 2) the TMP physician asked Wells to sign a release for medical records; and 3) the labor relations supervisor told Wells she would be placed on sick leave if she did not provide medical documentation. *Id.*

Wells neither produced the requested information nor permitted the TMP physician to speak to Dr. Hall. On July 28, 2008, the labor relations supervisor changed the leave of absence from a Code 31 medical layoff to an unpaid Code 52 layoff. (Weber Dep. 28).

In the meantime, on July 11, 2008, Wells had filed her second OCRC charges of discrimination and denial of fair representation against the Union for acts that occurred on May 30, 2008. (Wells Dep. at Ex. WW). Wells brought the charges because a Union employee approached her about disability retirement and gave her the necessary forms. (*Id.* at 409-411). Wells did not sign the forms.

Another Union representative contacted Wells and explained that disability retirement was voluntary. This conversation ended when Wells told the representative that she did not want to take disability retirement. (*Id*. at 414-415). At her deposition, Wells could not explain why she believed the Union employee retaliated against her by talking about disability retirement. (*Id*. at 413).

On August 13, 2008, Wells filed her third OCRC charge against Chrysler. She based this charge on the same allegations in the July 11 charge. (*Id*. at Ex. II).

On August 15, 2008, Wells filed another OCRC charge against the Union. (*Id*. at Ex. YY). In that charge, she alleged the Union retaliated against her by denying fair representation on August 13, 2008. Wells could not recall what events led her to file the charge. (*Id*. at 416-417).

The Union, through Dennis Schultz, filed a grievance against Chrysler on Wells' behalf on September 12, 2008. (Schultz Dep. at Ex. 1). Schultz attached seven additional pages of documentation that he received from Wells. (*Id.* at 10). The Union later withdrew the grievance without prejudice. (*Id.* at 9).

On September 28, 2008, Wells filed another OCRC charge against the Union. (Wells Dep. at Ex. ZZ). She alleged discrimination because the Union told her she was on Code 52 layoff until she produced medical records. Wells indicated that she neither knew what the Union did wrong nor had any information suggesting the actions were because of her race, age, or sex. (*Id.* at 419).

On November 26, 2008, the TMP physician again told Wells she would remain on Code 52 layoff without medical documentation. (*Id.* at 314). The same day, Wells filed a fifth and final OCRC charge. She asserted that she was denied pay and return to work in retaliation for filing her previous charges. (*Id.* at 328; Ex. OO).

Against Chrysler, Wells claims: 1) failure to accommodate under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(b)(5)(A), and O.R.C § 4112.02; 2) sex and race discrimination under Title VII, 42 U.S.C. § 2000e-2(a)(1); 3) age discrimination under 29 U.S.C. § 623(a); and 4) retaliation claims.

Wells also claims that UAW Local 1435 denied her fair representation because of: 1) race, sex, and age discrimination; and 2) retaliation.

Chrysler and UAW Local 1435 move for summary judgment on all claims.

### Standard of Review

I must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must provide the basis for its motion and identify portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party then "'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

8

250 (1986) (quoting Fed. R. Civ. P. 56(e)). The nonmoving party cannot rest on its pleadings or merely reassert its previous allegations; rather, the nonmovant must show that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and demonstrate that "there is a genuine issue for trial." *Celotex, supra*, 477 U.S. at 324.

To decide the motion for summary judgment, I will accept the evidence of the nonmoving party as true. I will construe all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Eastman Kodak Co. v. Image Technical Services,* 504 U.S. 451, 456 (1992). I will grant summary judgment only if the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

### Discussion

### 1. ADA Claim Against Chrysler:
### Failure to Accommodate

Wells cannot establish a *prima facie* case for failure to accommodate because she was not qualified within the meaning of the ADA to perform the essential functions of her job. Moreover, Wells caused the breakdown in the interactive accommodation process, thereby relieving Chrysler of any liability under the ADA.

To prove a claim of failure to accommodate under the ADA and its state law equivalent, O.R.C. § 4112.02 a plaintiff must prove: 1) she was disabled under the statutes; 2) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; 3) her employer knew or had reason to know about the disability; 4) she requested

9

an accommodation; and 5) the employer failed to provide a reasonable accommodation. *DiCarlo v. Potter*, 358 F.3d 408, 419 (6th Cir. 2004).

The accommodation process requires interaction between the employee and employer. A court cannot hold an employer liable under the ADA when it attempts to interact and the "employee refuses to participate or withholds essential information." *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 806 (7th Cir. 2005); *see also Kleiber v. Honda of Am. Mfg. Co.,* 420 F.Supp.2d 809, 828 (S.D. Ohio 2006) ("An employer cannot be found to have violated the ADA when responsibility for the breakdown in the informal interactive process is traceable to the employee and not the employer."), *aff'd by* 485 F.3d 862 (6th Cir. 2007).

### A. December 15, 2006 Until May 24, 2007

Chrysler did not fail to accommodate Wells between December 15, 2006 and May 24, 2007. Initially, Wells' decision to leave work without notice denied Chrysler any opportunity to accommodate her restrictions. Moreover, Wells did not attempt to contact Chrysler after leaving work to explain her absence.

Chrysler sent Wells a letter on February 26, 2007 asking her to establish a reason for her absence. In response, Wells provided an "off work" slip from Dr. Hall stating that Wells was not to work until May 24, 2007.

"The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden." *Alexander v. Northland Inn,* 321 F.3d 723, 727 (8th Cir. 2003). Dr. Hall stated that Wells was to be "off work." Chrysler could not have made any accommodation that would allow Wells to work in a position approved by her doctor.

### B. May 24, 2007 Until December 27, 2007

10

Between May 24, 2007 and December 27, 2007, Dr. Hall permitted Wells to work so long as, among other restrictions, she did not use her dominant hand. Chrysler placed her on Code 31 layoff—no work available for employees with restrictions to perform. Wells contends Chrysler failed to accommodate her disability by finding a position consistent with her restrictions during this period.

Wells admits that she could not perform the essential functions of the "fin setting" position without the use of her dominant hand. (Wells Dep. at 176-177). She does not dispute that she was unable to think of any jobs she was qualified to do on July 25, 2007. (*Id*. at 18; Parkins Dep. Ex. 1 at CG-PW-000223). Nonetheless, Wells contends that she was qualified to perform another position, with the accommodation of reassignment.

Wells listed positions she felt qualified to do "from 2006 until the date [she] retired" in an affidavit. (Wells Affidavit ¶4). In doing so, Wells ignored the fact that Dr. Hall indicated to Chrysler that Wells was to be off work, except between May 24, 2007 and December 27, 2007.

Wells contends that between May 24, 2007 and December 27, 2007 she could have performed one of the jobs listed in her affidavit. However, Wells failed to offer any evidence that any of the named positions were vacant. The ADA does not require an employer to reassign an employee to a position that is not vacant. *Smith v. Ameritech*, 129 F.3d 857, 867 (6th Cir. 1997). Nor does the ADA require an employer to create a new position to accommodate an employee. *Bratten v. SSI Svcs., Inc.,* 185 F.3d 625, 632 (6th Cir. 1999).

Moreover, the labor relations supervisor testified that many of the positions she listed did not exist or were inconsistent with Wells' physical restrictions. (Weber Dep. 31-32). Further, the

11

labor relations supervisor testified that there were no jobs that a production worker could perform at TMP without using a dominant hand. (Weber Dep. 37).

Wells relies heavily on speculative testimony of two former union stewards to demonstrate that she was qualified for some jobs. For example, Wells points to Edward Phillips' testimony that, "it's a big plant, and usually we would try . . . to keep the employee in the plant to find a job, and they would work with the company to try and tailor a job to their codes." (E. Phillips Dep. 12).

However, both former union stewards testified that they lacked personal knowledge about Wells' physical restrictions. (Schultz Dep. 11; E. Phillips Dep. 12). Thus, the former union stewards' testimony does not establish the existence of a genuine issue of material fact regarding whether Wells could have been accommodated through reassignment. Most simply put, these two witnesses were not qualified to offer their opinions as to whether Wells could or could not do any of the work which she claims she could have performed during this period.

In sum, Wells offers no evidence that there was an existing, vacant position for which she was qualified. Consequently, she cannot establish a *prima facie* case of failure to accommodate for the period of May 24, 2007 to December 27, 2008.

### C. January 2, 2008 Until Retirement

On January 2, 2008, Wells gave Chrysler more forms signed by Dr. Hall. The forms indicated she was totally disabled from working until September 26, 2008. Chrysler continued Wells on Code 31 paid layoff.

After receiving a form on June 26, 2008, the TMP physician instructed Wells to return in two weeks with additional information from Dr. Hall. Specifically, the TMP physician requested a diagnosis and prognosis. Chrysler warned Wells she would be downgraded to Code 52 layoff if she

12

failed to provide the information.

On July 10, 2008, Wells returned with substantially the same form from Dr. Hall, who did not provide the requested information. Nevertheless, Chrysler gave Wells an additional opportunity to 1) provide the requested information or 2) allow TMP to contact Dr. Hall directly. Wells failed to comply with either option.

Accordingly, Chrysler downgraded Wells to Code 52 non-paid layoff on July 28, 2008. Despite further requests for documentation, Wells did not present any additional forms to TMP regarding her diagnosis and prognosis after July 10, 2008.

Viewing this evidence in light most favorable to Wells, Chrysler's failure to find work for Wells after January 2, 2008, did not constitute a failure to accommodate. Wells was not qualified under the ADA because her doctor had forbidden her to work. An employer is not required to permit an employee to perform a job function that the employee's physician has forbidden. *Alexander, supra,* 321 F.3d at 727. Thus, Wells could not perform the essential duties of any job, with or without reasonable accommodation.

Nor did Chrysler fail to accommodate Wells when it downgraded her layoff from Code 31 to Code 52. An employer is not liable under the ADA where it attempts to interact and the "employee refuses to participate or withholds essential information." *Sears, Roebuck, supra,* 417 F.3d at 806. Chrysler repeatedly asked Wells to provide documentation including a diagnosis and prognosis or to allow TMP to contact Dr. Hall directly. Wells repeatedly did not do so. Because Wells refused to participate in the accommodation process, Chrysler cannot be held liable under the ADA.

### 2. Sex, Race, and Age Discrimination

13

Wells alleges six instances of sex, race, and age discrimination against Chrysler. I dismiss these claims in all respects. It is unnecessary to consider whether Wells established a *prima facie* case in any of the claims. Even if she did, Chrysler articulated legitimate, nondiscriminatory reasons for its actions. Wells, in turn, failed to prove that those reasons were pretextual.

Title VII prohibits an employer from discriminating against employees on the basis of sex or race. 42 U.S.C. § 2000e-2(a)(1). The Age Discrimination in Employment Act prohibits discrimination based on age. 29 U.S.C. § 623(a). The Ohio Civil Rights Act., O.R.C. § 4112.02, also prohibits discrimination based on sex, race, and age.

I analyze claims of discrimination based on sex, race, and age under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Asmo v. Keane, Inc.,* 471 F.3d 588, 592 (6th Cir. 2006).

Under this framework, the employee must first establish a *prima facie* case of discrimination. *Asmo*, *supra*, 471 F.3d at 592. If the employee succeeds, the employer must provide a legitimate, nondiscriminatory reason for its adverse employment decision. *Id.* If the employer does so, the employee must show that the employer's articulated reason was a pretext for intentional discrimination. If the employee cannot show pretext, the discrimination claim cannot survive a summary judgment motion. *Id.*

To show pretext, the employee must establish that the proffered reason: 1) had no basis in fact; 2) did not actually motivate the adverse action; or 3) was insufficient to motivate the adverse action. *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007). To prove the second prong, plaintiff must show that it is  more likely than not that the employer's proffered reason for its actions is not its true reason. *Id.* at 503.

14

When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be "mistaken, foolish, trivial, or baseless." Chen v. Dow Chem. Co., 580 F.3d 394, 401 (6th Cir. 2009).

### A. December , 2006, Placement of Wells on a "Fin Setting" Job

Chrysler did not discriminate against Wells by placing her on the "fin setting" job effective December 11, 2006. On the contrary, Chrysler placed Wells on the "fin setting" job because she requested a permanent position consistent with her restrictions.

Chrysler reasonably relied on the expert opinion of its physician and labor relations supervisor that the "fin setting" job was consistent with Wells' physical restrictions. Wells complained of shoulder pain on the second and third day of the job. The TMP physician thought this was part of the "learning curve" that new employees experience. (Parkins Dep. 16). She gave Wells "coaching tips" on the job and sent her back to work those days.

After her third day in the "fin setting" position, Wells freely chose not to return to work. There is no evidence of any further communication with Chrysler about accommodation or reassignment until Chrysler contacted Wells about her absence on February 26, 2007.

Accordingly, Wells can demonstrate no more than that Chrysler asked her to give the position a fair chance during her first week. This fact is consistent with Chrysler's belief that the "fin setting" job was within Wells' physical restrictions.

Wells suggestion that the proffered reason was pretext is conclusory. Wells offers no evidence to suggest this proffered reason: 1) had no basis in fact; 2) was less likely than discriminatory motivation; or 3) was insufficient to motivate the adverse action.

At most, Wells can prove that Chrysler was mistaken in its conclusion that the "fin setting" position was consistent with her physical restrictions. Still, Chrysler is entitled to summary judgment on pretext because it reasonably and honestly relied on the opinion of its physician and labor relations supervisor. *See Chen, supra,* 580 F.3d at 401.

### B. Not Placing Wells on a Job Between December 15, 2006 and May 27, 2007

Chrysler did not discriminate against Wells by not placing her on a job between December 15, 2006 and May 27, 2007. When Wells finally indicated a reason for her absence to Chrysler, she did so in the form of an "off work" slip from Dr. Hall.

The forms Dr. Hall signed consistently stated Wells could not work until May 27, 2007. (Wells Dep. at Ex. K; M). Chrysler honestly and reasonably relied on Dr. Hall's stated opinions that Wells could not work and granted her unpaid leave.

Wells contends the former union stewards' testimony about available work during this period supports her claim. But, as noted already, there was not basis on which the stewards gave their opinions.

Wells offers no evidence to suggest Chrysler's proffered reasons: 1) have no basis in fact; 2) were less likely than discriminatory motivation; or 3) were insufficient to motivate the adverse action. Even if she could somehow prove that Chrysler's conclusion that she could not work was mistaken, Chrysler would be entitled to summary judgment because it reasonably and honestly relied on Dr. Hall's medical opinion. *See Chen, supra,* 580 F.3d at 401.

### C. Denial of Wages and Benefits Between December, 2006 and May, 2007

16

Chrysler did not discriminate against Wells by denying her benefits between December, 2006 and May, 2007. Chrysler articulated that because Wells was disabled from working, she was not entitled to pay and benefits.

Chrysler honestly and reasonably relied on the medical opinion of Wells' physician to conclude she was disabled from working. Even if Wells can prove the conclusion was mistaken, Chrysler is entitled to summary judgment on pretext.

Wells offers no evidence to suggest this proffered reason: 1) had no basis in fact; 2) was less likely than discriminatory motivation; or 3) was insufficient to motivate the adverse action. She fails to prove that the proffered reason was mere pretext for discrimination.

Wells does suggest that she was wrongly denied pay and benefits because she was injured on the job. Even if she were injured on the job, Ohio Revised Code § 4123.74 would bar recovery. That statute provides immunity to employers who comply with Ohio's workers' compensation law, O.R.C. § 4123.35. Wells does not allege that Chrysler does not comply with O.R.C. § 4123.35.

### D. Placement on Code 52 Sick Leave in July, 2008

Chrysler did not discriminate against Wells by placing her on Code 52 sick leave in July, 2008. From January 2, 2008 onward, forms signed by Dr. Hall clearly indicated that Wells was totally disabled from working. (Wells Dep. at Ex. CC, DD, EE, FF).

Code 31 layoff is for employees with restrictions for whom the company cannot find work. Chrysler reasonably and honestly relied on the opinion Wells' physician that she was totally disabled form working. Chrysler gave Wells additional opportunities to provide more detailed documentation. It did so, just in case, contrary to  Bureau of Workers Compensation boilerplate forms which Dr. Hall signed, she was in fact not totally disabled from  working. Wells submitted no such

17

documentation.

According to a former union steward, the change from Code 31 to Code 52 layoff is standard procedure if the employee fails to provide timely medical documentation. (Schultz Dep. 31). Thus, Chrysler acted consistently with its legitimate, neutral company procedure by downgrading Wells from a Code 31 to Code 52 layoff.

In sum, Chrysler waited to downgrade Wells' layoff status for at least six months after from when Wells first submitted the form stating she was totally disabled. In that time, Chrysler gave Wells multiple chances and means of providing the necessary medical information. The record shows Chrysler was careful to make sure that Wells was, in fact, totally disabled from working before downgrading her to Code 52 leave. Only after repeated failures to show otherwise did Chrysler downgrade her leave.

Here again, Wells' allegation of pretext is conclusory. The care Chrysler exercised, the testimony that this action was consistent with procedure, and the lack of any contradictory evidence preclude a finding of pretext.

### E. Not Placing Wells on a Job After July, 2008

Chrysler did not discriminate against Wells by not placing her on a job after July, 2008. From January 2, 2008 onward, forms from Dr. Hall clearly indicated Wells was totally disabled from working. (Wells Dep. at Ex. CC, DD, EE, FF).

Chrysler repeatedly gave Wells a chance to show otherwise—that she was not totally disabled from working. As already discussed, Wells only gave Chrysler forms in which Dr. Hall indicated that she was totally disabled from working.

Chrysler reasonably and honestly relied on Dr. Hall's opinion as is indicated by its

18

repeatedly ignored requests for more information on which to base its decisions. Wells, and Wells alone, limited the information on which Chrysler could make its determinations.

All that Wells offers in response is what I have already found lacking: namely, testimony from union stewards who have no foundation for their opinions and otherwise conclusory assertions about pretext.

### F. Providing and Discussing
### Permanent Total Disability Paperwork

Chrysler did not discriminate against Wells by providing and discussing early retirement and permanent total disability paperwork.

Chrysler proffers the nondiscriminatory reason that it believed Wells was totally disabled from working. In reaching this belief, Chrysler honestly and reasonably relied on the opinion of Wells' physician.

Again, Wells relies on the same inadequate testimony of a former union steward to show that she was not disabled from working during this period. That same steward testified that he was unaware of Wells specific limitations. (E. Phillips Dep. 12). Even viewed in the light most favorable to Wells, this testimony does not establish a genuine dispute of material fact in regard to whether Chrysler could have found work for Wells.

Wells' allegation of pretext is conclusory. Wells fails to offer any proof to suggest  that Chrysler unreasonably or dishonestly relied on the opinion of her physician. Further, Wells offers no evidence to suggest this proffered reason: 1) had no basis in fact; 2) was, more likely than not, not Chrysler's true reason; or 3) was insufficient to motivate the adverse action. She fails to prove that the proffered reason was mere pretext for discrimination.

### 3. Retaliation Claims Against Chrysler

Wells alleges three claims of retaliation against Chrysler. I dismiss all three claims. It is unnecessary to consider whether Wells established a *prima facie* case in any of the claims. Even if she did, Chrysler articulated a legitimate, nondiscriminatory reason for its actions in each of the claims. Wells, in turn, failed to prove that any of the reasons were pretext for discrimination.

I analyze claims of retaliation under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp, supra,* 411 U.S. at 802; *Asmo, supra,* 471 F.3d at 592.

If the employee establishes a *prima facie* case, the employer must provide a legitimate, nondiscriminatory reason for its adverse employment decision. *Asmo*, *supra*, 471 F.3d at 592. If the employer does so, the employee must show the employer's articulated reason was a pretext for intentional discrimination. If the employee cannot show pretext, the discrimination claim shall not survive a summary judgment motion. *Id.* The same standard for determining whether a plaintiff has met her burden of showing pretext applies to claims of both discrimination and retaliation. *Abdulnour, supra,* 502 F.3d at 502 (6th Cir. 2007)..

## A. Providing and Discussing
## Permanent Total Disability Paperwork

The same reasoning applies to this claim as led to dismissal on the related discrimination claim. *See* § 2.D., *supra*. Well relies on the testimony of an unqualified witness, and her response to Chrysler's articulated, nondiscriminatory explanation is conclusory. Chrysler is entitled summary judgment on this claim.

## B. Request for Medical Information

20

Chrysler did not retaliate against Wells by requesting more medical information on June 26, 2008. Chrysler was merely doing their due diligence before downgrading Wells from paid to non-paid leave.

Technically, Wells was eligible for change from Code 31 to Code 52 on January 2, 2008. After that, Dr. Hall's signed forms indicated that Wells was totally disabled from working.

Wells now claims that there was a discrepancy in the forms because Dr. Hall indicated her restrictions in addition to stating that she could not work. I do not share this view. The form presented boxes for: 1) may work without restrictions; 2) may work with restrictions; or 3) is totally disabled from work. Dr. Hall repeatedly checked the third option, "is totally disabled from work." Moreover, Wells' current view is inconsistent with her failure to indicate at the time that she believed Dr. Hall was mistaken.

Wells has presented no other evidence to suggest that Chrysler's reliance on Dr. Hall's opinion was unreasonable or dishonest. Further, Wells offers no evidence to suggest this proffered reason: 1) had no basis in fact; 2) was less likely than discriminatory motivation; or 3) was insufficient to motivate the adverse action. She fails to prove that the proffered reason was mere pretext for discrimination.

### C. Warning and Completing of Change
### From Code 31 to Code 52

Chrysler did not retaliate against Wells by warning her that without additional medical information, her layoff would be changed from Code 31 to Code 52. Nor did Chrysler retaliate against Wells by changing her layoff to Code 52 when she failed to provide the requested medical information.

21

Chrysler claims that Code 52 layoff is standard procedure for an employee who is totally disabled from working. A former union steward confirmed that the change from Code 31 to Code 52 layoff is, in fact, standard procedure if the employee fails to provide timely medical documentation. (Schultz Dep. 31). Thus, Chrysler acted consistently with procedure when it downgraded Wells from Code 31 to Code 52 layoff.

Wells offers no evidence to suggest this proffered reason is pretextual. Chrysler is therefore entitled to summary judgment on this claim.

### 4. Denial of Fair Representation by Union

The Union did not deny Wells fair representation on the basis of race discrimination, sex discrimination, or retaliation. Nor did it retaliate against Wells by presenting her with paperwork and instructions on how to apply for permanent total disability retirement.

"A union does not have to process a grievance that it deems lacks merit, as long as it makes that determination in good faith." *Smolinsky v. IUE-CWA Automotive Conference Bd.,* 179 F.Supp.2d 808, 817 (N.D.Ohio 2002) (quoting *Williams v. Molpus,* 171 F.3d 360, 366-367 (6th Cir. 1999)(overturned on other grounds)).

"The relevant issue in assessing a Union's judgment is not whether it acted incorrectly, but whether it acted in bad faith." *Anderson v. Ideal Basic Indust.*, 804 F.2d 950, 953 (6th Cir. 1986). "Mere negligence or mistaken judgment is insufficient to establish a breach of the union's duty." *Poole v. Budd Co.*, 706 F.2d 181, 183 (6th Cir. 1983); *see also Vaca v. Sipes*, 386 U.S. 171, 190 (1967) ("A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.").

### A. Placement on "Fin Setting" Job

22

Wells contends that the Union denied her fair representation when she was placed on the "fin setting" job because of her race or sex. Her first discrimination charge against the Union stated, "On 12-11-2006 I was placed on this job and union allowed it. So far have not assist me or answered any calls or questions." (Amended Complaint Ex. B).

To establish a claim against the Union, Wells must demonstrate that it acted in bad faith. However, Wells offers no evidence that she even sought the Union's assistance to challenge whether the "fin setting" job was within her physical restrictions.

Thus, Wells cannot prove that, at the relevant time, the Union was aware she felt that the "fin setting" was inconsistent with her physical restrictions. Wells cannot prove that the Union chose, in bad faith, not to process her grievance without proof that it was aware of the grievance.

**B. Failure to Grieve Wells' Coding as Code 52 Unpaid Leave**

Wells contends that, in retaliation for OCRC filings, the Union denied her fair representation by not grieving her downgrade to Code 52 layoff.

The Union offers a legitimate, nondiscriminatory reason for not processing Wells grievance. It contends that her grievance was without merit because she: 1) was totally disabled from working, and 2) failed to cooperate with the TMP physician.

Because Chrysler reasonably and honestly relied on the medical opinion of Wells' own physician, Wells was qualified for Code 52 layoff in January, 2008. Chrysler initially kept her on Code 31. Only in July, 2008 after repeatedly ignored requests for medical information did Chrysler downgrade her layoff.

To establish a claim against the Union, Wells must prove that it acted in bad faith. To do so, Wells must prove that the Union's good faith reason for not processing the grievance was pretext

for retaliation. Wells offers no evidence that the Union chose not to process for any other reason than to prevent resources from being wasted on a claim it felt meritless. It, accordingly, is entitled summary judgment on this claim.

### C. Total Disability Retirement Papers

Wells contends that the Union retaliated against her by presenting her with papers and instructions to apply for total disability retirement papers. However, Wells admits that when she expressed disinterest, the discussion of total disability retirement ended. (Wells Dep. at 414-415).

Even if Wells could prove that the presentation of papers was an adverse employment action, which she cannot, her claim must fail. The Union proffers the nondiscriminatory reason that it believed Wells was totally disabled from working. In reaching this belief, the Union honestly and reasonably relied on the opinion of Wells' physician.

The only contrary evidence Wells offers is that of the former union steward. He was not qualified, for reasons already noted, to offer his opinion. Here again, Wells' allegation of pretext is conclusory. Wells fails to offer any proof to suggest  that the Union unreasonably or dishonestly relied on the opinion of her physician. Further, Wells offers no evidence to suggest this proffered reason: 1) had no basis in fact; 2) was less likely than discriminatory motivation; or 3) was insufficient to motivate the adverse action. She fails to prove that the proffered reason was mere pretext for discrimination.

### Conclusion

For the foregoing reasons, it is hereby:

24

ORDERED THAT:

1.    Defendant Chrysler Group LLC's motion for summary judgment (Doc. 86) be, and

       the same hereby is, granted; and

2.    Defendant UAW Local 1435's motion for summary judgment (Doc. 85) be, and the

       same hereby is, granted.

So ordered.

/s/ James G.Carr
Sr. U.S. District Judge